# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### OCTOBER 14, 2010 Session

# OPEN LAKE SPORTING CLUB v. LAUDERDALE HAYWOOD ANGLING CLUB

### Direct Appeal from the Chancery Court for Lauderdale County
### No. 7191 R.D.      Allen W. Wallace, Chancellor

---

### No. W2009-02269-COA-R3-CV - Filed January 13, 2011

---

This appeal involves a dispute over the location of a boundary line between tracts of land owned by two hunting clubs. After many years of litigation, the parties agreed that a new survey would be conducted by a new surveyor and that they would be bound by his decision. After the new surveyor filed a report and survey, one of the clubs filed a motion to set aside the survey, contending that the new surveyor did not make an independent determination regarding the location of the boundary line, but rather, copied a previous survey that was completed in the past. The trial judge refused to hold a hearing regarding the validity of the survey because the parties had agreed to be bound by the surveyor's decision. We reverse and remand for further proceedings.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

William C. Sessions, III, Memphis, Tennessee, for the appellant, Lauderdale Haywood Angling Club

J. Brandon McWherter, Jessica F. Salonus, Jackson, Tennessee, for the appellee, Open Lake Sporting Club

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Open Lake is a large body of water located in Lauderdale County, Tennessee, adjacent to the Mississippi River. It is one and a half miles in length and about one-half mile in width, consisting of around 1400 acres. It is thought to have been formed during the New Madrid Earthquake of 1811-12, which apparently changed the course of the Mississippi River and also created Reelfoot Lake.

Lauderdale Haywood Angling Club ("Lauderdale Haywood Club") was formed in 1891, and in 1898, it was conveyed a tract of land consisting of about 40 acres adjacent to Open Lake from which Open Lake could be accessed. This land was suitable for the location of cabins and houses, the launching of boats, and for other recreation.

Another organization, Open Lake Sporting Club ("Open Lake Club"), was organized in 1905, and it was conveyed the body of water known as Open Lake. Both clubs, from the very beginning, agreed to the reciprocal and mutual use of their respective properties. Open Lake Club desired the use of Lauderdale Haywood Club's property for launching boats and for lots on which to build houses and lodges for its members. In exchange, Open Lake Club allowed members of Lauderdale Haywood Club to use the lake for fishing, hunting, and other recreation.

In 1953, Open Lake Club purchased a tract of land that lies just to the south of the 40-acre tract owned by Lauderdale Haywood Club. The deed to Open Lake Club's property stated that it contained "8.82 acres, more or less." It also contained a stipulation from the grantor, stating, "I am not to be held responsible nor liable in the event of a controversy being made by the Haywood and Lauderdale County Angling Club about the locations of the corners and line between their land and the land hereby conveyed by me[.]"

In 1988, Open Lake Club commenced this lawsuit by filing a complaint against Lauderdale Haywood Club in chancery court. Open Lake Club claimed that it had notified Lauderdale Haywood Club that it was terminating the right of its members to use the lake without paying a fee. According to the complaint, the members of Lauderdale Haywood Club nevertheless continued to access the lake. Thus, Open Lake Club sought injunctive relief prohibiting the members of Lauderdale Haywood Club from using said lake.

Lauderdale Haywood Club filed an answer and counterclaim, in which it sought an injunction prohibiting Open Lake Club from interfering with its right to use the lake. Lauderdale Haywood Club also claimed that a dispute had arisen as to the location of the

common boundary line between its property and the property owned by Open Lake Club. Lauderdale Haywood Club asked that the court declare the rights of the parties and determine the true location of the boundary line.

Following a trial, the chancellor issued a 27-page trial opinion, which was later incorporated into a final judgment on June 4, 1991. The court found that Open Lake Club had a deed to the body of water, while Lauderdale Haywood Club had a deed to approximately 40 acres that was high land, suitable for launching boats, locating cabins and houses, and recreation. The court found that the two clubs had agreed over the years that Open Lake Club could use the 40-acre tract in exchange for its allowing Lauderdale Haywood Club to use the lake. The court noted that the minutes of Open Lake Club contained numerous references to its use of Lauderdale Haywood Club's property and to Lauderdale Haywood Club's reciprocal use of Open Lake Club's property. The court found that members of Open Lake Club had placed cabins, houses, and fishing camps on the land owned by Lauderdale Haywood Club. Because each club was using the property of the other with permission, the court found that the doctrine of estoppel applied equally to both parties, and both parties were estopped from claiming any greater or more extensive rights. Thus, the court ruled that Lauderdale Haywood Club was not entitled to the use of the lake, except as permitted or consented to by Open Lake Club. It further stated that Open Lake Club had acquired no rights to the use of Lauderdale Haywood Club's 40 acre tract, except as may be permitted by Lauderdale Haywood Club.

Regarding the boundary dispute, each of the clubs had presented its own survey at trial in an attempt to establish the disputed boundary, and the two surveyors had testified at length. The court's opinion addressed the boundary dispute as follows:

> The facts in the boundary dispute demonstrate the problems created when real estate is acquired by deeds that do not close and do not have the proper measurements and calls. Such deeds convey only property that is left after the boundaries of the surrounding tracts have been accurately determined. Even though a deed may call for a specified amount of acres, the grantee will only receive title to the acreage remaining after the boundary lines of the adjoining parcels have been surveyed and correctly computed.[1]
> . . . .
> The Court has carefully reviewed and considered all of the credible proof, and the Court is unable to determine, by a preponderance of the evidence, that either the survey of [Open Lake Club's surveyor] or the survey

_____

[1] Open Lake Club's deed to the 8.82 acre-tract referenced "the northeast corner of the Conner & Mason Grant for 100 acres."

of [Lauderdale Haywood Club's surveyor] represents and describes the true boundary lines of the area in dispute.

The Court does find that the plaintiff and the defendant own the property in the area called for by their deeds, but the Court is unable to determine, by a preponderance of the evidence, the exact amount of acreage or the actual boundary lines. . . .

The Court further finds that there has not been adverse possession by either party of the controversial area sufficient to vest title. . . . The houses and lodges have been placed on the property by permission[.]

The Court is aware of the time and expense involved in the filing, preparation and trial of this case in the Chancery Court of Lauderdale County, and the Court regrets very much that a determination cannot be made to locate the correct boundary lines between the parties.

In the final judgment, the court stated that a decision on the counterclaim regarding the boundary lines was deferred until additional proof was presented.

Lauderdale Haywood Club filed a notice of appeal of the trial court's order, which this court dismissed for lack of a final judgment. The parties subsequently entered into a written agreement that purportedly settled all matters in controversy, and it was made part of a final decree entered by the trial court on November 11, 1992. Among other things, the written agreement provided, with regard to the boundary dispute, that the findings of a third party surveyor selected by the court would be final. The order states:

[T]he parties agree for the Court to order a new survey in order to determine the common boundary lines existing between the properties owned by the parties. The boundary lines as determined by the surveyor shall be final and shall be binding on all parties to this lawsuit. . . . The surveyor will survey the property in dispute as alleged in the parties' complaints and shall file with the Court a survey depicting his findings. . . . The surveyor shall have access to any and all court records, including surveys of the parties' surveyors, and access to any and all information regarding the boundary line dispute which the parties' attorneys may wish to provide. The surveyor may confer with either or both of the parties' surveyors. . . . The findings of the surveyor shall be final and each party waives their right to appeal from the findings of the surveyor. The findings depicting the boundary lines shall be made a part of this final decree and incorporated by reference.

The court's order appointed a certain surveyor from Bolivar, Tennessee, to determine the common boundary lines between the parties.

Approximately ten years later, in 2002, Open Lake Club filed a "Petition for Appointment of Surveyor," stating that the court-appointed surveyor had never responded to counsel's inquiries and that the boundary dispute remained unresolved. Open Lake Club asked the court to appoint another surveyor under the terms and conditions set forth in the previous decree.

In 2004, Senior Judge Allen Wallace was appointed to hear the case. The parties subsequently agreed upon another surveyor, Joey Wilson, to complete the survey. On August 16, 2006, Mr. Wilson's "Report of Findings & Opinions" was filed with the court. According to Mr. Wilson's survey, the boundary line was farther north than either party had claimed at trial, which resulted in Open Lake Club being declared the owner of land to which it had not previously claimed ownership.

The trial court issued a memorandum opinion on May 25, 2007, which mainly addressed another issue that had arisen between the parties, but also stated, "The parties agreed on a surveyor, and eventually a survey was completed, and the Court understands the surveyed boundary line has been accepted by both parties as the boundary line. An order should be prepared reflecting that boundary line so as to establish a boundary by judicial decree."

On May 29, 2008, Lauderdale Haywood Club filed a motion to set aside the survey. According to Lauderdale Haywood Club, the difference between the parties' respective positions at trial regarding the location of the boundary line was only about 45 feet, and the survey prepared by Mr. Wilson placed the boundary line approximately 200 feet north of the points argued at trial. Lauderdale Haywood Club claimed that Mr. Wilson's survey gave approximately six acres of its land to Open Lake Club, such that Open Lake Club's parcel that was thought to contain 8.82 acres now contained about 14 acres. Lauderdale Haywood Club contended that Mr. Wilson had failed to conduct an independent survey and, instead, had simply adopted the opinions of a previous surveyor.

Mr. Wilson's report discussed several relevant deeds which conveyed the land at issue to Open Lake Club and to Lauderdale Haywood Club. However, he went on to say, "Since it will become apparent to the Court that the exact location of these title lines, protracted from ancient records, will have little bearing on the final determination of the disputed boundary, but have tended to add confusion and consternation to its location, I will rely on Mr. Billingsley's development of the title documents." Mr. Billingsley was a surveyor who was retained by Open Lake Club to survey the area in 2004. Mr. Wilson's report stated that during his field survey, he "retraced the footsteps of Mr. K.M. Billingsley as outlined in his survey," and, "following his footsteps we arrived at the location shown as 'Mason-Connor Grant,' referenced as the western boundary" of Lauderdale Haywood Club's property. The

survey plat prepared by Mr. Wilson further stated that "[a]ll title boundaries, structures and improvements shown hereon, with the exception of the title boundaries noted, were taken from the survey by K. Max Billingsley[.]"

Lauderdale Haywood Club filed the affidavit of another surveyor, J. Brantley Morris, III, whom Lauderdale Haywood Club had retained to review Mr. Wilson's report along with the other surveys that had been conducted, including Mr. Billingsley's. According to Mr. Morris, Mr. Billingsley did not establish the disputed boundary line by the deeds and had claimed that it was impossible to do so. Mr. Morris explained that Mr. Billingsley simply resorted to possession and acquiescence, based on the location of club members' houses, in order to determine who owned the property, and he said that Billingsley had disregarded all physical and documentary evidence of title boundaries.[2] Mr. Morris stated that Mr. Wilson then simply adopted Billingsley's opinion without making an independent determination. According to Mr. Morris, Mr. Wilson's report did not mention how he established the boundary line that is at the heart of the dispute between the parties, and the only monuments along the line that were shown on Wilson's plat were set by Billingsley, not by Wilson. Mr. Morris stated that it is necessary to locate the northeast corner of the Conner and Mason grant in order to establish the true location of the disputed line, and he said that "Wilson's survey does not make any attempt to locate this most critical point."

According to Mr. Morris, the duty of a retracement surveyor is to locate on the ground the boundary lines and corners established by the original survey. He said that in order to determine the location of disputed boundary lines on the ground, a retracement surveyor must restore the original surveyor's lines in the same position as they were marked initially at the time of the original land grant. Mr. Morris said that the purpose of the resurvey is to determine where the footsteps of the original surveyor were located, not the footsteps of the most recent surveyor. Mr. Wilson, however, had admittedly retraced the footsteps of Mr.

---

[2] Mr. Billingsley's report was quoted as stating,

Both of these lines of survey [relied upon at trial] runs through or excludes buildings owned and used by members of the Open Lake Club from their property. . . . Open Lake Club has used[,] maintained and improved the property to the left (west and south) of the now existing road to the landing and [Lauderdale Haywood] Club has done the same on the property to the right (north and east) of the road leading into the property. . . . *Disregarding all physical and documentary evidence of title boundary, possession and use and acquiescence of both parties appears to have established the north boundary as shown on my plat of survey.*

(emphasis added). According to Lauderdale Haywood Club, Mr. Billingsley was apparently unaware that Lauderdale Haywood Club had allowed members of Open Lake Club to build houses on property owned by Lauderdale Haywood Club.

Billingsley. Mr. Morris said that Mr. Wilson did not locate on the ground the boundary lines and corners established by the original survey. Mr. Morris also stated that Mr. Wilson's comment about the deeds having "little bearing on the final determination of the disputed boundary" was very perplexing, as the legal description was an indispensable guide with necessary information for the reconstruction of property lines.

In sum, Mr. Morris said it was evident that Mr. Wilson's survey was not an independent survey, and he said that he had little faith in Mr. Wilson's effort to properly locate the true boundary line. Mr. Morris said that a judgment based on Mr. Wilson's survey would not accurately describe the true boundary line.

Apparently, the trial judge held a conference call with the attorneys and decided to hold a hearing on Lauderdale Haywood Club's motion to set aside the survey. Open Lake Club then filed a motion to reconsider, asking the court to either not hear the motion, or in the alternative, to limit the scope of the hearing to "purely legal issues." Open Lake Club contended that because the parties had agreed to be bound by the boundary line determined by the new surveyor, Lauderdale Haywood Club should be precluded from challenging the validity of the survey.

The parties' attorneys appeared before Judge Wallace on September 16, 2008, and counsel for Open Lake Club again asked the court to reconsider its decision "to even consider this Motion to Set Aside at all." Counsel for Open Lake Club contended that the parties' situation was analogous to the establishment of a boundary by arbitration or agreeing to be bound by coin flip. Counsel for Lauderdale Haywood Club disagreed, stating that it was their intention to have a surveyor examine the titles and deeds, read the trial testimony, and "put on the ground" what was encompassed in the evidence, incorporating the monuments in the field. He suggested that Mr. Wilson had done none of those things.

On January 9, 2009, the trial court entered an order approving and adopting Mr. Wilson's survey as the final determination of the disputed boundary and stating that neither party was entitled to appeal the order. On February 9, 2009, the trial court entered an order denying Lauderdale Haywood Club's motion to set aside and granting Open Lake Club's motion to reconsider.

Lauderdale Haywood Club filed a motion to alter or amend, claiming that Mr. Wilson did not perform the task that he was assigned and arguing that the errors and shortcuts in his report made it unacceptable. They claimed that Mr. Wilson simply duplicated another surveyor's work and submitted it as his own. A second affidavit from Mr. Morris was submitted, in which Mr. Morris stated that he had discussed Mr. Wilson's survey with Mr. Billingsley. Mr. Billingsley reportedly agreed that it was very apparent that Mr. Wilson had

duplicated his survey. According to Mr. Morris, Mr. Billingsley stated that it would be impossible for Mr. Wilson to have produced a survey, doing his own work, with the exact same bearing and distance calls stated in Mr. Billingsley's survey, to the second of a bearing and a hundredth of a foot. Mr. Billingsley reportedly told Mr. Morris that he believed that Mr. Wilson had taken Mr. Billingsley's digital file and "tweaked it a little" before submitting it as his own. Mr. Morris stated that the wording of text and some annotations were identical in both reports. Mr. Morris said that Mr. Billingsley stated to him, as he did in his survey report, that he was unable to reconstruct the disputed lines as originally intended, and therefore, Mr. Wilson's report duplicating Billingsley's work would also fail to reconstruct the disputed lines.

According to Lauderdale Haywood Club, since 1953, there had been eight surveys of the area in question, and six of the surveys placed the disputed boundary line within 47 feet of each other, while the surveys prepared by Billingsley and Wilson placed the line some 200 feet away from the others. Mr. Morris claimed that he had found a discrepancy between the deed to the 8.82-acre tract that Open Lake Club received in 1953 and the language in the deed that its grantor had received, which allegedly initiated the boundary dispute. Lauderdale Haywood Club submitted the affidavit of its president, who stated that in agreeing to the settlement with Open Lake Club, it was his intention to have an independent surveyor determine the location of the boundary based on trial testimony, deeds and available documents, and monuments on the ground.

Lauderdale Haywood Club claimed that the result of the court's order was to take away its property that for over 100 years had not been in dispute. Lauderdale Haywood Club contended that the result reached by Mr. Wilson's survey contradicted the evidence presented at trial and Chancellor Whitenton's 1992 order. They noted that Open Lake Club members had testified at trial that they were permitted to build houses on Lauderdale Haywood Club's land in exchange for allowing Lauderdale Haywood Club members to use the lake. Accordingly, Chancellor Whitenton's 1992 order had expressly found that members of Open Lake Club had placed cabins, houses, and fishing camps on the land owned by Lauderdale Haywood Club. **(r.21).** However, under Mr. Wilson's survey, all of the houses owned by Open Lake Club were deemed to be on Open Lake Club's land, and all of Lauderdale Haywood Club's houses were deemed to be on Lauderdale Haywood Club's land.

The trial court denied the motion to alter or amend on October 1, 2009. Lauderdale Haywood Club timely filed a notice of appeal.

## II.   ISSUES PRESENTED

On appeal, Lauderdale Haywood Club argues that the trial court abused its discretion

in accepting Mr. Wilson's "survey" and denying its motion to set aside. It also contends that the trial court abused its discretion by doing so without holding a hearing or allowing the presentation of evidence or testimony. Open Lake Club argues that the survey is binding and that this appeal is frivolous, entitling it to an award of attorney's fees.

For the following reasons, we reverse the decision of the chancery court and remand for further proceedings.

### III. DISCUSSION

We find it appropriate to begin with an examination of the trial court's order incorporating and approving the parties' agreement and providing for the appointment of a surveyor.[3] The order provides that the parties agreed "for the Court to order a new survey in order to determine the common boundary lines existing between the properties owned by the parties." It further stated, "The surveyor will survey the property in dispute as alleged in the parties' complaints and shall file with the Court a survey depicting his findings." The boundary lines as determined by the surveyor were to be final and binding.

If, as alleged by Lauderdale Haywood Club, Mr. Wilson simply copied Mr. Billingsley's report without making an independent determination regarding the location of the critical corner or the disputed boundary line, then his report does not comply with the plain language of the court's order, and it does not satisfy the parties' agreement. The parties did not agree to have a third party simply choose a survey from among those already completed in order to establish the location of the boundary line, just as they did not agree to flip a coin. The parties agreed "for the Court to order *a new survey* in order to determine the common boundary lines." (emphasis added). The new surveyor was to have access to all of the court records, and he was authorized to confer with the previous surveyors, but the order was clear in providing that the new surveyor would "survey the property in dispute" and "file with the Court *a survey depicting his findings*." (emphasis added).

The trial court did not hold a hearing regarding the validity of Mr. Wilson's survey and did not receive proof beyond the affidavits that were submitted in support of Lauderdale Haywood Club's motion to set aside and motion to alter or amend. Lauderdale Haywood Club claims that the parties had already scheduled depositions "of the witnesses and experts"

---

[3] Open Lake Club claims that Mr. Wilson's decision should be treated as that of a special master or an arbitrator. Open Lake Club concedes that there was no order entered appointing Mr. Wilson as a special master in this case. In any event, however, a trial court can specify or limit a special master's powers and may direct the master to report only upon particular issues or to do or perform particular acts. **Tenn. R. Civ. P. 53.02.** Thus, we would still consider the trial court's order regarding the appointment of a surveyor.

when the trial court decided not to hold a hearing. Lauderdale Haywood Club asks for the opportunity to "develop its proof, present evidence and cross examine the parties [and] experts, specifically Billingsley and Wilson," in order to determine what Mr. Wilson "did or did not do" in completing his "survey." We agree that it should be afforded that opportunity and that Open Lake Club should likewise have an opportunity to present its own proof. Therefore, we remand this case for the trial court to hold a hearing on the motion to set aside the survey in order to determine whether Mr. Wilson complied with the court's order by conducting a new survey and making an independent determination of the disputed boundary line.

## IV. CONCLUSION

For the aforementioned reasons, we reverse the decision of the chancery court and remand for further proceedings. Further, we decline to award attorney's fees to Open Lake Club. Costs of this appeal are taxed to the appellee, Open Lake Club, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

-10-